UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRYANT K. CALLOWAY,<br><br>                      Plaintiff,<br>    v.<br><br>TORY M. PANKOPF, an individual, TORY M. PANKOPF, LTD, a Nevada Corporation, et al.,<br><br>                      Defendants. | Case No. 3:12-cv-00441-MMD-WGC<br><br>ORDER<br><br>(Plaintiff's Motion for Entry of Default Judgment – dkt. no. 31; Defendants' Motion to Set Aside Entry of Default – dkt. no. 32) |

**I.  SUMMARY**

Before the Court are Defendants Tory M. Pankopf, as an individual ("Pankopf"), and Tory M. Pankopf, Ltd.'s ("Pankopf Ltd.") (collectively as "Defendants") Motion to Set Aside Entry of Default (dkt. no. 32) and Plaintiff Bryant K. Calloway's Motion for Entry of Default Judgment (dkt. no. 31). For the reasons discussed below, both motions are denied. The case will be transferred to the Central District of California.

**II.  BACKGROUND**

Plaintiff Bryant K. Calloway filed a verified complaint in California state court on July 9, 2012. ("Complaint") (Dkt. no. 1-1.) One month later, on August 17, 2012, Defendant Pankopf removed the action to this Court based on diversity pursuant to 28 U.S.C. §1441(b). (Dkt. no. 1.) Pankopf filed his certificate of service of the notice of the removal to adverse parties on August 31, 2012. (Dkt. no. 3.) On September 10, 2012,

when the answers to the complaint were due, Defendants filed and served their statement regarding removal. (Dkt. no. 4.)

This case saw no activity from either party until five months later on February 25, 2013, when Plaintiff moved for entry of clerk's default. (Dkt. no. 5.) Two days later, on February 27, 2013, Pankopf filed his Answer to the complaint on behalf of himself. (Dkt. no. 6.) Magistrate Judge William G. Cobb entered a minute order directing Defendants to address, on or before March 11, 2013, Plaintiff's request for entry of clerk's default and explain, in accordance with Fed. R. Civ. P. 55(c), why the Clerk should not enter a default against each of them. (Dkt. no. 8.) Pankopf was also directed to provide an explanation as to why no answer was filed for Pankopf, Ltd., since Defendant's notice of removal reflects that both Pankopf and Pankopf, Ltd. were served with Plaintiff's action. (*Id.*)

On March 18, 2013, Pankopf Ltd. filed its answer to the complaint. (Dkt. no. 11.) On the same day, after being granted an extension of time, Defendants filed their response to Plaintiff's motion for entry of clerk's default explaining why Pankopf, Ltd.'s answer was not filed at the same time as Pankopf's answer. (Dkt. no. 12.) Defendants did not address the reason for the initial delay in filing responsive pleadings on behalf of Pankopf. On April 12, 2013, Judge Cobb entered an order directing the Clerk to enter default against Defendants, because the motion for default was filed before the answers. (Dkt. no. 15.) Defendants were directed to file a Rule 55(c) motion to set aside entry of default as a remedy. (*Id.*) On the same day, the Clerk entered default. (Dkt. no. 16.)

Over two weeks later, on April 29, 2013, Defendants filed a motion for reconsideration regarding Judge Cobb's Order, arguing that the clerk of the court is precluded from entering default after an answer is filed. (Dkt. no. 17.) This Court disagreed and on January 22, 2014, the Court entered an Order denying Defendants' motion to reconsider entry of default. (Dkt. no. 30.)

There was no activity from either party until April 14, 2014, when Plaintiff filed his Motion for Default Judgment. (Dkt. no. 31.) Then on April 28, 2014, just over three

months after the Court's Order denying Defendants' motion to reconsider, Defendants filed their motion to set aside entry of default. (Dkt. no. 32.)

### III. DEFENDANTS' MOTION TO SET ASIDE ENTRY OF DEFAULT

#### A. Legal Standard

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). In determining whether good cause exists, a court considers three factors: "'(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default.'" *Brandt v. Am. Bankers Ins. Co. of Fla.,* 653 F.3d 1108, 1111 (9th Cir. 2011) (quoting *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984)). "These factors . . . are disjunctive." *Brandt,* 653 F.3d at 1111 (quoting *Falk,* 739 F.2d at 463)). Thus, the court may refuse to set aside default if it holds any one of the three factors is true. *U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir. 2010).

However, strong policy in the Ninth Circuit is to decide cases on their merits. "'[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Mesle,* 615 F.3d at 1091 (quoting *Falk,* 739 F.2d at 463) (alternation in original). The *Falk* factors are more liberally applied in the context of a clerk's entry of default than in the default judgment context. *Mesle,* 615 F.3d at 1091 n.1 (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 631 (7th Cir. 2009)); *see also Haw. Carpenter's Trust v. Stone,* 794 F.2d 508, 513 (9th Cir. 1986). "'The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment.'" *Aristocrat Techs, Inc. v. High Impact Design & Ent'm't,* 642 F. Supp. 2d 1228, 1233 (D. Nev. 2009) (quoting *O'Connor v. State of Nev.,* 27 F.3d 357, 364 (9th Cir. 1994)).

#### B. Analysis

The Court finds that the third *Falk* factor — defendant's culpable conduct — counsels against setting aside the default. "A defendant's conduct is culpable if he has

3

received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original), *overruled in part on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). In order for a failure to answer to be intentional, "the movant must have acted with bad faith." *Mesle*, 615 F.3d at 1092. "A movant cannot be treated as culpable simply for having made a conscious choice not to answer." *Id.* If a defendant "neglectfully[1] fails to answer, yet offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process[,]" he or she is not necessarily culpable. *TCI Group*, 244 F3d. at 697–98. Culpable behavior "usually involves conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court." *Mesle*, 615 F.3d at 1094. For purposes of the good cause factors, culpable behavior is also typically found when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* (citing *TCI Group,* 244 F.3d at 698.)

Here, Defendants stipulated that service upon them was complete on August 1, 2012. They were thus provided with actual notice of the filing of the action and knew when the answers were due. Instead of filing answers, Defendants removed the case to this Court, and filed a statement regarding removal on the same date that the answers were due.

Pankopf's proffered excuse for failing to file responsive pleadings is the multiple distractions that stem from very difficult circumstances involving his family, meeting obligations to clients' legalities, and managing a solo practice. (Dkt. no. 32-1 at 6, 7.) However, the fact that he filed his statement of removal during this time period is further evidence that he was conscious of his legal obligations and was able to answer. (Dkt.

---

[1] In this context, "'[n]eglect' 'encompasses simple, faultless omissions to act and, more commonly, omissions caused by carelessness.'" *TCI Group,* 244 F.3d at 697 (quoting *Pioneer Inv. Servs Co.v. Brunswick Assocs Ltd. P'ship,* 507 U.S. 380, 388 (1993)).

no. 4.) As an attorney, Pankopf should know the consequences of his failure to answer and is presumed to be culpable. *Mesle*, 615 F.3d at 1093 ("When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionally.") (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 690 (9th Cir. 1988) (Defendant was "a lawyer, presumably . . . well aware of the dangers of ignoring service of process")); *see also Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986) (Defendants' failure to answer the complaint was culpable when defendants had first filed motions to extend their time to answer, indicating an ability to deal with legal requirements.).

Moreover, Pankopf's explanation that he missed the responsive filing deadline due to family obligations is suspect. Pankopf declares that due to the above mentioned distractions, his failure to respond was inadvertent. However, in his declaration, Pankopf indicated that he moved his daughter to Arizona in March 2012, roughly four months before the action commenced, and she did not return until December, roughly two months after answers were due. (Dkt. no. 32-2.)

Pankopf's handling of this case after he made an appearance further supports the Court's finding of culpable conduct. Pankopf was asked to explain his delay in filing answers, and he did not reply until over a year later when he filed his motion to set aside entry of default on behalf of himself and Pankopf Ltd. He indicated that, during the time he was asked to explain himself, he had a lack of mental preparedness to disclose the circumstances to the Court and to the Plaintiff. (Dkt. no. 32-1.) Pankopf cites to *TCI Group*, where the defendant who defaulted suffered severe family trauma and the court concluded that her mental state — causing her to seek psychiatric care — coupled with her lack of familiarity with legal matters led to a finding that her failure to answer was not culpable. *TCI Group*, 244 F.3d at 699. Here, not only is Pankopf familiar with legal matters, he has also failed to show that his mental state escalated to anything more than heavy stress. Though he participated in family therapy sessions once a week over the phone, he does not show how his mental state has hindered his ability to practice law.

On the contrary, Pankopf continued to work as an attorney during this time. (Dkt. no. 32-2.) Thus, this explanation is not persuasive.

In addition to his lengthy explanation of hardship, Pankopf points to the language in Fed. R. Civ. P. 55(c) and argues that his notice of removal to this court "is a pleading and, if it is not, it and the payment of the filing fee establishes Defendants' clear intent to 'otherwise defend.'" (Dkt. no. 32 at 5.) However, Rule 12(a) plainly states that Defendants "must serve an *answer.*" *See* Fed. R. Civ. P. 12 (emphasis added.) Furthermore, Rule 81(c) is clear as to when to file an answer after removal. The rule states: "A defendant who did not answer before removal must answer . . . 21 days after receiving . . . a copy of the initial pleading stating the claim for relief, 21 days after being served with the summons for an initial pleading . . . or seven days after the notice of removal." *See* Fed. R. Civ. P. 81(c). Defendants failed to comply with any of the three options. Pankopf, having been provided with actual notice of the action and having practiced law in the states of California and Nevada, is not excused in his misunderstanding of the rules. As stated in previous decisions, "[w]e see no reason for the federal courts to excuse such professional neglect . . . parties who remove cases to the federal courts should become acquainted with and comply with the Federal Rules of Civil Procedure . . . the failure of this lawyer, who was the removing party, to properly read the clear language of Rule 81(c) does not amount to good cause either." *See Speiser, Krause & Madole P.C. v. Oritz*, 271 F.3d 884, 887 (9th Cir. 2001) (citing *Savarese v. Edrick Transfer & Storage, Inc.,* 513 F.2d 140, 146 (9th Cir. 1975)).

This defense also calls into question Pankopf's candor, because it is inconsistent with the notion that he "simply forgot" to file an answer. This defense suggests that he understood his removal to constitute proper pleading or otherwise defending. Thus, the failure seems to have been deliberate.

Defendants' delay in moving to set aside the entry of default further gives rise to a suspicion of culpability and lack of due diligence. Defendants were on notice from the Court's order for entry of default that filing a motion to set aside entry of default was the

proper course of action. (Dkt. no. 15.) Yet, Defendants waited over three (3) months after the Court's order denying his motion for reconsideration, and fourteen (14) days *after* Plaintiff filed his motion for entry of default judgment to file his motion to set aside entry of default. The cause of Defendants' delay is unknown. Defendants do not provide an explanation for the three-month delay. According to Pankopf's declaration, his family circumstances have remarkably improved for the better since March of 2013, which eliminates his primary excuse of familial hardship that caused severe stress. (Dkt. no. 32-2.)

Defendants' conduct is culpable and without excusable neglect. Defendants do not provide an adequate explanation as to their delay in answering the complaint, as they were present and able to comply with the rules. Defendants are legally sophisticated parties and are thus aware of the consequences of their actions. Their motion to set aside entry of default is untimely without explanation despite having notice from the Court that filing such a motion was necessary. Accordingly, Defendants' motion to set aside entry of default is denied.

## IV. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

### A. Legal Standard

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *Eitel v. McCool,* 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi,*

346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel,* 782 F.2d at 1471–72.

**B. Analysis**

**1. Procedural Requirements**

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). The Clerk properly entered a default against Defendants pursuant to Fed. R. Civ. P. 55(a), due to the fact that the Defendants' answers were filed after the Plaintiff's motion for entry of default was filed. (Dkt. no. 16.) Defendants' answers were untimely, and they did not file their motion to set aside entry of the clerk's default until after Plaintiff filed this motion for entry of default judgment. Therefore, the notice requirement is not implicated, and there is no procedural impediment to entering a default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Produce Alliance, LLC v. Lombardo Imps., Inc.*, No. 2:12-cv-00433, 2013 WL 129428, at *2 (D. Nev. Jan. 9, 2013).

**2. *Eitel* Factors**

The first, fourth, fifth, and seventh *Eitel* factors weigh against a decision to grant default judgment.

The first factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002). "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *TCI Group,* 244 F.3d at 701

(quoting *Falk*, 739 F.2d at 463). Unlike cases where defendants have been entirely absent and non-responsive, Defendants here have been present and active in the case. Plaintiff will thus not be hindered in his ability to pursue his claim. This factor weighs against default judgment.

As to the fourth factor, the Court takes into consideration: (1) "the amount of money requested in relation to the seriousness of the defendant's conduct," *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; (2) "whether large sums of money are involved," *Curtis v. Illumination Arts, Inc.,* 33 F. Supp. 3d 1200 (W.D. Wash. 2014); and (3) whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.,* 725 F. Supp. 2d 916 (N.D. Cal. 2010). Here, the Plaintiff is seeking a minimum of $280,519.06, which includes $174,416.00 in punitive damages. (Dkt. no. 31.) Because this is a large sum of money where more than half of the requested sum is punitive, the case will need to be decided on the merits in order to determine whether the amount sought is proportional to the harm caused by the defendant's conduct. This factor weighs against a default judgment.

The fifth factor considers the possibility of dispute regarding any material facts in the case. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* The parties dispute the existence of an agreement between them regarding payment to Plaintiff for his involvement in the underlying matter and for his post arbitration work. Whether or not there was an agreement is a material fact in the case. This factor therefore weighs against default judgment.

The seventh *Eitel* factor holds a strong preference for deciding cases on their merits "whenever reasonably possible." *See Eitel*, 782 F.2d at 1472. This preference, however, is not dispositive when standing alone. *See PepsiCo, Inc.,* 238 F. Supp. 2d at 1177 (citation omitted). Here, though not acting in an orderly or timely manner, Defendants have been active in the case and have demonstrated a desire to litigate. A decision on the merits is thus not impossible and is a practical route given the

Defendants' responsiveness. Pankopf has represented that Defendants are able to proceed in the matter now that Pankopf's personal matters have been mostly resolved. This factor therefore weighs against default judgment.

While the sixth factor — the possibility that the default resulted from excusable neglect — weighs in favor of default in light of the Court's finding that Defendants are culpable, the Court finds that default judgment is not appropriate considering the other factors that weigh against it.

In conclusion, the *Eitel* factors weigh against default judgment. Plaintiff will not be hindered in his ability to pursue his claim. There is a dispute as to a material fact in this case along with a request for a large sum of money that is primarily punitive. Defendants have been present and active in the case, thus displaying a willingness and ability to litigate the matter. Plaintiff's Motion for Entry of Default Judgment is denied.

Further, given the Court's *Eitel* analysis, the Court also finds that it is proper to set aside default pursuant to Rule 55(c). As the Court previous mentioned, the Rule 55(c) "good cause" factors are disjunctive. *Brandt,* 653 F.3d at 1111. The Court has determined that Defendant engaged in culpable conduct and that Defendant's motion to set aside entry of default should be denied. However, the remaining Rule 55(c) "good cause" factors — whether the plaintiff will be prejudiced and whether the defendant has a meritorious defense — weigh in favor of not entering default, as explained by the Court's analysis of the first and fifth *Eitel* factors. The Court therefore determines that the most prudent course of action is to also set aside the default and allow this case to proceed on its merits.

**V.   IMPROPER VENUE**

"A civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant to the district court … for the district and division embracing the place where such action is pending." *See* 28 U.S.C. §1441(a). "Removal to the improper district, where a federal court otherwise has the jurisdictional power to hear the case, presents a procedural (as opposed to

jurisdictional) defect curable by transfer to the proper venue." *See Soundview Commc'ns, Inc. v. Lotus Mgmt., LLC*, No. C-13-3402 EMC, 2013 WL 5954793, at *2 (N.D. Cal., Nov. 6, 2013) (quoting *Keeth v. State Farm Fire & Cas. Co.*, No. 10-13219, 2011 WL 479903, at *2 (E.D. Mich. Feb. 7, 2011)).

It is uncontested by the parties that this Court has original jurisdiction over the matter. Plaintiff and Defendants are citizens of different states and the amount in controversy is for more than $75,000. *See* 28 U.S.C. §§1332. Though original jurisdiction lies with this Court, it was removed to the incorrect venue, thus creating a procedural defect. Defendants should have removed the case to the Central District of California, which is the Court that embraces Orange County, California, where the case was filed. Therefore, this procedural defect may be cured by transferring the case to the proper venue.

There exists a split among the district courts as to whether a case should be remanded back to the state court or transferred pursuant to §1406(a). The courts that chose to remand cases[2] did so by strictly applying §1441(a) in accordance to the holding in *Polizzi v. Cowles Magazine, Inc.*, 345 U.S. 663 (1953), which stated that §1406(a) does not apply to cases involving removal because it is a general venue statute that only governs actions that were initiated in the district court. *Id.* at 1331.

However, in the interest of justice and in disagreement as to the applicability of §1406(a), other courts have chosen to transfer cases that were improperly removed to the wrong district or division.[3] In *Ullah v. F.D.I.C.*, 852 F. Supp. 218 (S.D.N.Y. 1994), the Defendant removed to the improper federal district. *Id.* The Court ruled that a transfer is

---

[2]Examples of such cases within the Ninth Circuit include: *Maysey v. CraveOnline Media, LLC,* No. CV 09-1364-PHX-JAT, 2009 WL 3740737 (D. Ariz. Nov. 5, 2009); and *Aprea II Limited Partnership v. The Law Office of Jacob Hafter, P.C.*, No. 2:10-cv-01687-GMN-PAL, 2010 WL 4687633, (D. Nev. Nov. 10, 2010).

[3]Examples of such cases within the Ninth Circuit include: *Shamrock Mfg. Co. v. Ammex Corp.*, No. CV-F-10-908 OWW/SKO, 2010 WL 3153976 (E.D. Cal. Aug. 9, 2010); and *Soundview Commc'ns, Inc. v. Lotus Mgmt, LLC*, No. C-13-3402 EMC, 2013 WL 5954793 (N.D. Cal. Nov. 6, 2013).

1  proper because "[i]mproper removal . . . does not compel remand of the case to the state
2  court so that it can then be removed to the [proper district court]. That would bring about
3  additional delay and expense while serving no useful purpose." *Id.* at 221. "Federal
4  courts have broad authority to reach a proper result by the most expedient means.
5  Where a case can be sent directly to its proper site, this may be done without resort to
6  unnecessary intermediate steps." *Id.*

   The circumstances in this case weigh in favor of a transfer. As stated above, this Court has original jurisdiction over the case, thus making this an issue of venue. Plaintiff did not challenge the improper removal. Instead, he mentioned the improper removal in his pleadings to support his contention that Defendants' failure to answer his complaint resulted from culpable conduct thus warranting default judgment. The improper removal was provided by Plaintiff as an example of such culpable conduct. As a result, the case proceeded in this Court for over two (2) years as the parties grappled over the issue of default. Consequently, transfer is more appropriate in light of the procedural history of this case. The Court finds the analysis of the *Ullah* court persuasive. The court in *Ullah* decided that remanding the case "would bring about additional delay and expense while serving no useful purpose." *Ullah*, 852 F. Supp. at 221. If the present case was remanded to the Superior Court of California, Orange County, Defendants could again remove the case, this time to the Central District of California. This will lead to additional delay on top of the deferment already caused by Defendants' sluggish behavior, as well as Plaintiff's failure to challenge the removal. Therefore, in the interest of justice, it is proper to transfer the case to the Central District of California as it is the most expedient route in light of the circumstances. *Id.*

**VI.  CONCLUSION**

It is therefore ordered that Defendants' Motion to Set Aside Entry of Default (dkt. no. 32) is denied.

It is further ordered Plaintiff's Motion for Entry of Default Judgment (dkt. no. 31) is denied.

It is further ordered that the Clerk's entry of default (dkt. no. 16) is set aside and this case is transferred to the Central District of California for further proceedings.

DATED THIS 25th day of March 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE